NELSON MORRIS ET AL. v. DANIEL M. JANSEN AND
AALTJE JANSEN.

*Deed—After-acquired title—Estoppel—Fraudulent conveyances.*

Where the title to land purchased by a wife with her own money
from an administrator is taken in the name of her husband,
and he conveys the land to her by warranty deed, a second
deed executed to him by the administrator under proceedings
taken to cure a defect in the first deed, growing out of the
want of proper proceedings upon which to base it, inures to
the benefit of the wife, and there is no need of a second con-
veyance from the husband to perfect her title.

Appeal from Kent. (Grove, J.) Submitted on briefs
January 3, 1894. Decided March 27, 1894.

Bill in aid of execution. Defendants appeal. Decree
reversed, and bill dismissed. The facts are stated in the
opinion.

*Wolcott & Ward,* for complainants.

*Dodge & Eastman,* for defendants.

McGRATH, C. J. This is a bill filed in aid of an
execution issued upon a judgment rendered against the
defendant Daniel M. Jansen, and levied upon real estate
which stood in the name of Aaltje Jansen, wife of Daniel
M. Defendants appeal.

Defendants came to this country from Holland, and
settled in Grand Rapids, in 1875. The wife then had
$1,200 in her own right. The husband had no money.
The husband went to work as a day laborer. The wife
expended some of her money for household furniture, and
loaned out the balance. A lot of land was bought in
1878, another lot was purchased in 1881, another lot was

acquired in 1882, and in 1884 the lot in question was bought. The testimony clearly shows that these lots were purchased by the wife with the original amount brought over by the wife in 1875, and its accretions. The loans had all been made, and the title to these lots of land taken, in the husband's name. In 1885 the husband, by warranty deed, conveyed each of these lots to the wife.

The lot in controversy was conveyed April 15, 1884, by George W. Hagar, administrator of the estate of Martin Hagar, deceased, of Marlboro, Mass., to Daniel M. Jansen. In 1887, Aaltje Jansen applied to Allen C. Adsit for a loan on said lot. Mr. Adsit advised her that the proper proceedings had not been had upon which to base the deed from the said administrator, and that, therefore, her title was defective. New proceedings were instituted to cure the defect, and another deed was procured from said George W. Hagar, administrator, July 13, 1887. When it was received, it was found that the last deed ran to Daniel M. Jansen, but Mr. Adsit informed Aaltje Jansen that the record could be afterwards corrected by a deed from Daniel M. to Aaltje. Such deed was not procured until May 4, 1892, and it is this conveyance that is attacked.

Defendant Daniel M. Jansen went into business as a dealer in meats on his own account in 1889, and began buying from complainants. He paid his accounts weekly. The last week's bill, purchased about the middle of May, 1892, was not paid, and complainants recovered judgment for the amount of such bill.

In view of these facts, the deed of May 4, 1892, was not necessary to perfect the title in Aaltje Jansen. The deed from Daniel M. to her was a full warranty, and was duly recorded. The deed procured by Daniel M. inured to her benefit.

The court below held that the other conveyances received by Aaltje Jansen in 1885 were in excess of the existing

indebtedness; but, unless the conveyances then made were in fraud of then existing creditors, or made with an intent to defraud subsequent creditors, it mattered not that those conveyances were entirely without consideration. There is no evidence in the record that they were designed to defraud subsequent creditors, and the only testimony upon the record which is relied upon to show that those conveyances were made with intent to defraud existing creditors is that drawn out upon cross-examination of Mrs. Jansen, which is as follows: .

"*Q.* Mrs. Jansen, you remember the time that your husband was in some way connected with Mr. Higgins? ·

"*A.* Connected with Mr. Higgins? I don't know. I know he worked for Mr. Higgins.

"*Q.* You knew he was on Mr. Higgins' note, did you not?

"*A.* I know that he had helped Mr. Higgins quite a good many times along by indorsing a note for Mr. Higgins.

"*Q.* Do you remember when Mr. Higgins failed?

"*A.* I guess I do somewheres. I guess a little after my husband left him.

"*Q.* What time was that?

"*A.* That was some time—some part—of 1885 or 1886.

"*Q.* Your husband was on Higgins' notes?

"*A.* Yes, sir.

"*Q.* At that time?

"*A.* Yes, sir.

"*Q.* Do you know how much he had indorsed for Mr. Higgins?

"*A.* Oh, several times. He indorsed for him, to help him along, on account Mr. Higgins was not a man of much money, and needed the money for his business. Still, my husband never had any benefit of it; neither have I.

"*Q.* No, he didn't have any benefit of it, but do you know anything about how many hundred dollars worth he was on Higgins' paper?

"*A.* No, sir; I couldn't say that."

The decree below must be reversed, and the bill dismissed, with costs to defendant Aaltje Jansen.

The other Justices concurred.